IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| United States of America, | Crim. No. 4:04-cr-00482-TLW |
|---|---|
| v. | **Order** |
| Demitrius Coleman | |

This matter is before the Court on Defendant Demitrius Coleman's motion for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 203. For the reasons set forth below, his motion is denied.

## BACKGROUND

On April 27, 2004, a federal grand jury returned an eight count Indictment charging Defendant and his co-defendant with several carjacking and firearm offenses. ECF No. 1. A Superseding Indictment was returned on August 24, 2004 that charged the same offenses and included special findings. ECF No. 45. On November 24, 2004, Defendant pled guilty to two counts of Brandishing a Firearm During and in Relation to a Crime of Violence. ECF Nos. 94, 95, 96. On March 10, 2005, a sentencing hearing was held during which Defendant was sentenced to a term of imprisonment of 7 years as to Count 2 consecutive to 25 years as to Count 4, for a total aggregate sentence of 32 years imprisonment. ECF Nos. 101, 109. BOP records reflect that his projected release date is June 12, 2031.

1

## APPLICABLE LAW

Absent certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides, in relevant part, as follows:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But prior to the passage of the First Step Act, compassionate release motions could only be filed by the BOP, so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and

2

compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and compelling reasons warranting a sentence reduction is a question reserved to the sound discretion of the district court.

## DISCUSSION

Defendant argues that a sentence reduction is appropriate for two reasons: 1) the First Step Act's elimination of "stacking" sentences pursuant to § 924(c) is extraordinary and compelling, and 2) his underlying medical condition in light of COVID-19 is extraordinary and compelling. As to the First Step Act's change to § 924(c), Defendant argues that if he were sentenced under current law, he would receive a sentence of 168 months imprisonment—a term he has already served. ECF No. 203 at 3-4. As to his health condition and the impact of COVID-19, Defendant asserts that he is obese and cannot socially distance in prison. *Id.* at 5. He specifically notes the "dormitory setting" and shared common areas, the resulting inability to social distance, and limited access to hygiene products. *Id.* In his reply to the Government's response, he also argues that that the § 3553(a) factors weigh in favor of release. ECF No. 223.

The Government opposes his motion, arguing that 1) Defendant has not identified an "extraordinary and compelling reason," and 2) the § 3553(a) factors "counsel against granting the 'rare' remedy of a reduction." ECF No. 222 at 11-21. In

3

support of its argument, the Government cites the seriousness of Defendant's federal offenses (the instant offenses) and his significant criminal history. *Id.* at 19-20.

In considering whether to reduce Defendant's sentence, the Court has carefully reviewed the Presentence Investigation Report (PSR) and has considered the statutory penalties, the Guidelines range, applicable caselaw and statutory law, all of the § 3553(a) factors, and his post-sentencing conduct.[1] In light of those considerations, the Court concludes that Defendant has not shown that the § 3553(a) factors weigh in favor of release. The Court's reasons for reaching this conclusion include (1) the violent nature of the instant offenses, (2) Defendant's criminal history that includes additional serious conduct, and (3) his disciplinary issues while incarcerated.

As to the "extraordinary and compelling" reason standard, the Court acknowledges that the First Step Act eliminated the "stacking" of sentences pursuant to § 924(c), and as a result, if Defendant plead to the same two charges today, he would be subject to a lower mandatory minimum. However, the Court notes that Congress explicitly did not make the First Step Act's change to § 924(c) retroactive.[2]

---

[1] The Court has considered in its analysis each of the issues raised in Defendant's filings, including (1) the First Step Act's elimination of "stacking" sentences; (2) the impact and spread of COVID-19 at his facility; (3) the way that the BOP is managing the pandemic at its facilities; (4) his obesity in light of COVID-19; (5) his lack of recent disciplinary issues while incarcerated; (6) his rehabilitation effort while incarcerated, including educational and programming courses; and (7) his release plan including living arrangements and employment opportunities.

[2] The Court recognizes that this change must still be considered when evaluating a motion for compassionate release. *See McCoy*, 981 F.3d at 284.

Pub. L. No. 115-391, § 403(b), 132 Stat. 5194, 5222 (2018) ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment.*" (emphasis added)). The Fourth Circuit has held that the First Step Act's change to § 924(c) sentences "can constitute an 'extraordinary and compelling' reason for relief." *McCoy* at 285-88. *McCoy* makes it clear that district courts have the discretion to reduce § 924(c) stacking sentences. The Fourth Circuit stated that district courts are "empowered…to consider any extraordinary and compelling reason for release that a defendant might raise." *Id.* at 284 (quoting *Zullo*, 976 F.3d at 230). Courts have "discretion to reduce terms of imprisonment that are based on sentencing ranges subsequently lowered by the Sentencing Commission." *Id.* at 287. Courts are to "conduct individualized inquires" and individualized reviews of motions for compassionate release. *Id.* at 289. In light of *McCoy*, and for purposes of Defendant's motion, the Court will assume that Defendant has established "extraordinary and compelling" circumstances.[3]

However, based on its analysis and balancing of the § 3553(a) factors, the Court concludes that Defendant's motion should be denied. The Court has balanced those factors in light of the compassionate release issues not in play at the original sentencing. *Kibble* at 335 (Gregory, C.J., concurring). In conjunction with the §

---

[3] The Court also notes that the BOP began administering COVID-19 vaccines to inmates and staff in January 2021. According to BOP records, approximately 201,803 doses have been administered as of July 15, 2021. Specifically, Lompoc FCC (Defendant's facility) has fully inoculated 230 staff members and 1,258 inmates.

5

3553(a) factors, it is appropriate to highlight the facts of the instant offense and Defendant's criminal history. Prior to Defendant's federal convictions, his criminal history began when he was just 14-years-old and includes convictions for drug activity and violent conduct: (1) possession of a controlled substance (law enforcement recovered six small yellow Ziploc plastic bags containing crack cocaine); (2) possession of a stolen auto (the vehicle was stolen from a hospital); (3) manufacture/deliver cocaine; (4) aggravated unlawful use of a weapon/vehicle (three-inch barrel zip gun); (5) possession of a controlled substance (PCP); (6) battery – cause bodily harm (Defendant punched one victim in the face, punched one in the arm, and one in the jaw). PSR ¶¶ 34-39. These convictions resulted in 9 criminal history points which placed Defendant in a criminal history category of IV. PSR ¶ 44. After a review of Defendant's criminal history, the Court concludes that "the history and characteristics of the defendant" weigh against release.

After serving his sentences for those convictions, Defendant continued to commit criminal offenses more violent than those in his past. Specifically, he committed the instant offenses—two violent carjackings. The facts surrounding the carjackings are outlined in Paragraphs 12 – 23 of the PSR and detail the violent nature of the offenses. The first carjacking occurred on December 26, 2003 and involved two victims. PSR ¶ 13. Defendant and his co-defendant "displayed dark colored handguns" and demanded that one victim drive the vehicle at gunpoint while the other ride in the back seat. *Id*. The victims were forced to drive from Myrtle Beach to Conway under the threat of death. PSR at ¶¶ 13-14. Once they were in Conway,

6

the "victims were forced out of the car and onto their knees" where they were robbed of cash, keys, and clothing items. PSR ¶ 14. Defendant and his co-defendant made one victim take off his pants "and searched the pants as well as his private parts for drugs." *Id.* Then, the victims were placed back in the car and driven to another location in Conway where they were left "on the shoulder of the road" after Defendant and his co-defendant fled on foot. PSR ¶ 15.

The second carjacking occurred the next day, on December 27th, and also involved two victims. After the victims started the car, Defendant and his co-defendant "appeared pointing handguns" at the victims. PSR ¶ 16. Like the first carjacking, one victim was ordered to drive to another location (a dirt road) while the other victim rode in the back seat. *Id.* Once the vehicle arrived on the dirt road, the victims "were forced to disrobe and get inside the trunk of their vehicle." PSR ¶ 17. The Defendants then drove to a different location with the victims forced into the trunk of the car. *Id.* During the carjacking, Defendant and his co-defendant stole the victims' clothing, shoes, jewelry, and cash, and threatened to kill them "if they talked." PSR ¶ 18. Law enforcement ultimately stopped Defendant, searched the car, and found a .45 caliber pistol which had been stolen in North Carolina. PSR ¶ 21. The Government also asserts that Defendant's conduct on December 30th, a third carjacking, is an additional consideration that weighs against release. ECF No. 222 at 19, PSR ¶ 19.

In sum, Defendant participated in a violent carjacking spree where he and his co-defendant brandished firearms, had several victims, threatened to kill those

7

victims, and robbed them. This conduct was egregious, serious, and significant, and demonstrates Defendant's disregard for the safety of others. After reviewing the facts of the instant offenses, the Court concludes that "the nature and circumstances of the offense" also weigh against release.

The Court also concludes that §§ 3553(a)(2)(A)-(C) weigh against release for similar reasons. The circumstances of the instant offenses and Defendant's criminal history demonstrate his propensity to engage in criminal conduct and commit acts of violence. His actions also demonstrate his disrespect for the law and the safety of others. As stated above, Defendant's conduct during the carjackings was egregious and violent, and the sentence imposed was and is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and to afford adequate deterrence.

The Court next turns to §§ 3553(a)(3)-(6)—the kinds of sentences available, the Guidelines sentencing range, any applicable policy statements, and the need to avoid sentencing disparity. Defendant pled guilty to two counts of Brandishing a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c). He pled guilty knowing those counts carried a statutory minimum sentence of 32 years (7-year statutory minimum on Count 2, with 25 years consecutive on Count 4). The Court imposed the statutory minimum sentence of 32 years when a Life sentence was available.

The Court acknowledges that the First Step Act eliminated the "stacking" of sentences pursuant to § 924(c), and as a result, if Defendant only pled to the same

two charges today, he would be subject to a lower mandatory minimum. Defendant asserts that if he were sentenced under current law he would receive "an aggregate total of only 168 months" which is shorter than the time he has already served. ECF No. 203 at 3-4. This Court concludes otherwise. It is clear that the Government sought a significant sentence against Defendant, and the § 924(c) sentences were a way to accomplish that in light of the significant violence involved in the crimes committed by Defendant. The Court has considered a recalculation of the Guidelines under current law, and notes that although the First Step Act lowered the minimum sentences on § 924(c) convictions, the maximum is still up to Life. With Defendant's prior record and the continued violence in connection with the federal offenses, a minimum sentence would be unlikely. There is limited basis to conclude that a lesser or significantly lower sentence would have been imposed in light of the federal offense conduct and the previously noted convictions. The Court has given careful consideration to this issue and §§ 3553(a)(3)-(6) and concludes that those factors do not weigh in favor of release.

As noted, in *McCoy*, the Fourth Circuit indicated that district courts should not grant release based solely on the First Step Act's change to § 924(c) but should instead "conduct individualized inquires" and consider individual factors specific to the defendant. 981 F.3d at 288. The Court has followed that guidance and has based its decision on the individualized considerations outlined herein.

As to the remaining factors, the Court acknowledges that the record reflects that Defendant has made rehabilitative efforts while incarcerated. However, that

9

factor, balanced against the factors above, does not warrant release. Additionally, the records submitted by Defendant reflect that he has had several disciplinary issues while incarcerated. ECF No. 203-3 at 2-4. Although his last incident occurred in 2015, he had several, serious prior incidents: (1) being insolent to staff member in 2012; (2) possessing a dangerous weapon in 2007 (6" flat metal shank); (3) refusing to obey an officer in 2007; and (4) fighting with another person in 2006. *Id.* The Court concludes that this disciplinary history weighs against release. In sum, Defendant committed serious, violent crimes, both the instant offenses and in the past, and has continued to have disciplinary issues while incarcerated. His rehabilitative efforts do not outweigh the repetitive violence and contempt for the law that he exhibited before his incarceration. Defendant has served approximately 55 percent of his sentence, and the Court's § 3553(a) analysis counsels that Defendant must serve the remainder of the sentence imposed.

In light of the seriousness and violent nature of the instant offenses, Defendant's criminal history that demonstrates a pattern of violent conduct, and the need for the sentence imposed, the Court concludes that the § 3553(a) factors weigh against release. Accordingly, a sentence reduction is not appropriate and Defendant's

motion for compassionate release, ECF No. 203, is **DENIED**.[4] [5]

    **IT IS SO ORDERED.**

*s/ Terry L. Wooten*
Terry L. Wooten
Senior United States District Judge

July 16, 2021
Columbia, South Carolina

---

[4] To the extent he seeks an order directing the BOP to grant him an early release to home confinement pursuant to the CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020), the Court does not have discretion to issue such an order. *See, e.g., United States v. Hendrix*, No. 1:10-cr-00067-MR-WCM-2, 2020 WL 2319698, at *1 (W.D.N.C. May 11, 2020) ("The discretion to release a prisoner to home confinement lies solely with the Attorney General. The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this." (citations omitted)).

[5] The Court has given careful and full consideration to the Fourth Circuit's recent per curiam opinion in *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021), including the concurring opinions, and has applied those standards in considering this motion. It has also reviewed the Fourth Circuit's recent decision in United States v. High, 2021 WL 1823280 (4th Cir. May 7, 2021) and has similarly applied those standards.