IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America<br><br>v.<br><br>Demitrius Coleman | Crim. No. 4:04-cr-00482-TLW<br><br>**ORDER** |

This matter is before the Court on Defendant Demitrius Coleman's second *pro se* motion for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 238. Relief was denied on his first motion for a sentence reduction under this same statute. ECF No. 203. For the reasons set forth below, his motion is denied.

## BACKGROUND

On April 27, 2004, a federal grand jury returned an eight count Indictment charging Coleman and his co-defendant with several carjacking and firearm offenses. ECF No. 1. A Superseding Indictment was returned on August 24, 2004, which charged the same offenses and included special findings. ECF No. 45. On November 24, 2004, Coleman pled guilty to two counts of brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Counts 2 and 4). ECF Nos. 94, 95 & 96. On March 10, 2005, Coleman was sentenced to a term of imprisonment of 7 years as to Count 2 and to 25 years as to Count 4, said terms to run consecutively for a total aggregate sentence of 32 years. ECF Nos. 101 & 109.

Coleman appealed his sentence to the United States Court of Appeals for the Fourth Circuit, which affirmed this Court's judgment. ECF Nos. 111 & 153. He then sought to collaterally attack his sentence via a petition for habeas corpus pursuant to 28 U.S.C. § 2255. ECF No. 160. The Court denied his petition in a detailed order. ECF No. 185. Coleman sought reconsideration of the order, which was denied. ECF Nos. 188 & 216.

On August 21, 2020, Coleman filed his first § 3582 motion for compassionate release. ECF No. 203. There, he requested relief based on (1) the threat posed by the COVID-19 pandemic, and (2) the fact that he is servicing a sentence based on "stacked" § 924(c) convictions. *See id.* The Court denied his motion based on its analysis and balancing of the 18 U.S.C. § 3553(a) sentencing factors. ECF No. 225. Coleman appealed the denial of his first § 3582 motion to the Fourth Circuit, which affirmed this Court's ruling. ECF No. 231, 236 & 237.

Coleman filed the present motion for compassionate release, his second, on September 26, 2022. ECF No. 238. He again seeks relief "on his stacked § 924(c)(1)(c) convictions which is currently outdated." *Id.* at 5. The Government has since filed its response in opposition to which Coleman has filed a reply. ECF Nos. 245 & 246.

Accordingly, this matter is ripe for review, adjudication, and disposition.

## APPLICABLE LAW

Absent certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the

compassionate release statute. That statute provides, in relevant part, as follows:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But prior to the passage of the First Step Act, compassionate release motions could only be filed by the Bureau of Prisons ("BOP"), so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis

in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents "extraordinary and compelling reasons" warranting a sentence reduction is a question first determined within the sound discretion of the district court.

## DISCUSSION

To provide context to both Coleman's motion and the Court's decision, the Court will first review the offense conduct underlying Coleman's present sentence before reviewing the parties' arguments and conducting its own analysis of the issues at play.

### I. THE OFFENSE CONDUCT

As outlined in the Presentence Investigation Report ("PSR"), the offense conduct at issue relates to Coleman's participation in three armed carjackings—all extremely violent and involved the use and brandishing of firearms.[1]

The first carjacking occurred on December 26, 2003. PSR ¶ 13. It involved two victims and took place outside of Club Static in Myrtle Beach, South Carolina. *Id.* As one of the victims exited his vehicle to enter the club, he was approached by Coleman and his codefendant, both of whom were armed and wearing dark masks and dark clothing. *Id.* The two displayed their handguns and demanded that the victim reenter his vehicle. *Id.* The two joined him in the vehicle, along with the second victim who had remained behind the wheel of the vehicle. *Id.* At gunpoint, Coleman and his codefendant instructed the second victim to drive to Conway,

---

[1] During Coleman and his codefendant's post arrest inventory, one of these firearms came back as stolen from North Carolina. PSR ¶ 21.

Page 4 of 18

South Carolina, several miles away from Myrtle Beach. *Id.* During this drive, Coleman and his codefendant, having kidnapped the victims, threatened to kill them. *Id.*

Once in Conway, the two victims were ordered out of the car and onto their knees. *Id.* ¶ 14. Coleman and his codefendant then took money, jewelry, and clothing from the two victims and searched them for drugs. *Id.* The victims were ordered back into the vehicle and driven around Conway by Coleman and his codefendant. *Id.* Eventually, Coleman and his codefendant pulled the car over, took the keys out of the ignition, and removed the vehicle's CD player from the dash. *Id.* They then fled on foot. *Id.*

The second carjacking occurred a few hours later. *Id.* ¶ 16. Coleman and his codefendant again waited for potential victims outside of Club Static. *Id.* As two men exited the club and got into their vehicle, Coleman and his codefendant approached, pointed handguns at the two now-victims, and ordered them to drive. *Id.*

Like the first carjacking, Coleman and his codefendant, having kidnapped the two individuals, threatened to kill them. *Id.* ¶¶ 16 & 18. The victims were instructed to drive to a remote, unknown dirt road. *Id.* ¶¶ 16 & 18. Once there, Coleman and his codefendant forced the victims to disrobe. *Id.* ¶ 17. They were then forced inside the vehicle's trunk. *Id.* ¶ 17. Coleman and his codefendant then drove the vehicle to another location. *Id.* There, they released the two victims from the trunk and told them to remain with the vehicle. *Id.* Coleman and his codefendant

then fled on foot with the victims' clothing, earrings, wallets, and approximately 100 CDs. *Id.* ¶¶ 17–18.

The third carjacking occurred in the early morning hours of December 30, 2003. *Id.* ¶ 19. Coleman and his codefendant again waited for their victims outside of Club Static. *Id.* They approached two men outside of the club and demanded they get into their car. *Id.* Once the four were inside the victims' car, Coleman and his codefendant repeatedly pointed their firearms at the victims' heads, threatening to kill them. *Id.* Coleman and his codefendant searched the car, hoping to find guns and cash. *Id.* However, they discovered that the victims had no guns, very little cash, and that the car was almost out of gas. *Id.* They ordered the kidnapped victims to drive to a gas station but changed their mind upon seeing a police officer. *Id.* Like the two previous carjackings, they order the victims to drive down a remote dirt road before demanding they stop the car. *Id.* Coleman and his codefendant proceeded to steal the victims' clothing, their jewelry, and a CD player. *Id.* They ordered the victims to get into the trunk and drove the vehicle to a second location. *Id.* Once there, they ordered the victims to remain in the trunk and fled on foot. *Id.*

Hours later, Coleman and his codefendant were stopped by police and arrested. *Id.* ¶ 20. The victims' stolen items were discovered during both an inventory of the vehicle and a later search of Coleman and his codefendant's apartment. *Id.* As discussed, Coleman's participation in the carjackings led to him being named in seven counts of an eight-count Indictment. Ultimately, he pled guilty to two § 924(c) counts in the Indictment, which resulted in a sentence of 32

years. The remaining counts in the Indictment were dismissed pursuant to the parties' plea agreement. Those dismissed counts were charges of carjacking (Count 1), carjacking (Count 3), carjacking (Count 5), § 924(c) (Count 6), and § 922(g)(1) (Count 8). *See* ECF No. 1.

## II.   THE PARTIES' ARGUMENTS

Before addressing the merits of Coleman's motion for compassionate release, the Court will first review the arguments raised by both Coleman and the Government. *See* ECF Nos. 238, 245 & 246.

### A.   *Coleman's Arguments in Support of His Motion*

Coleman's motion asserts only one basis for establishing "extraordinary and compelling" reasons justifying either his release or a reduction in his sentence. Specifically, he asserts that the First Step Act's changes to the "stacking" of § 924(c) convictions provides an "extraordinary and compelling" reason for relief.[2] ECF No. 238. For his requested relief, Coleman asks that the Court reduce his sentence from 384 months to 288-300 months. ECF No. 238 at 4.

### B.   *The Government's Opposition*

The Government opposes Coleman's motion on two independent grounds. First, the Government argues that the "stacking" of his § 924(c) sentences does not provide an "extraordinary and compelling reasons" warranting a relief. ECF No. 245 at 6–11. Alternatively, the Government argues that, even if Coleman had presented

---

[2] *See* First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5222, § 403.

an "extraordinary and compelling reason," his motion should still be denied when considering the § 3553(a) sentencing factors. *Id.* at 11–13.

## III. THE COURT'S REVIEW

The Court will first evaluate whether Coleman has presented "extraordinary and compelling reasons" warranting a reduction in his sentence before considering whether the § 3553(a) factors weigh in favor of his release.[3]

### A. *The "Extraordinary and Compelling Reasons" Standard*

The sole argument in Coleman's motion asserts that he is entitled to compassionate release because his sentence is partially based on two "stacked" 924(c) convictions. When Coleman was sentenced in 2005, federal prosecutors could bring gun charges providing for the "stacking" of multiple violations of § 924(c) for sentencing because a first and "second or subsequent" offense could be charged at the same time. Thus, a defendant, like Coleman, who committed two armed carjackings while brandishing a firearm could be charged with two violations of § 924(c) and, if convicted at trial, face a 7-year mandatory minimum as to the first violation and a 25-year mandatory minimum as to the second violation, said sentences to run consecutively.

Years after Coleman was sentenced, in the First Step Act of 2018, Congress modified § 924(c) to provide that the 25-year mandatory minimum penalty now applies to a "second or subsequent" § 924(c) conviction only if the first § 924(c) conviction already "has become final." Pub. L. No. 115-391, § 403(a), 132 Stat. 5194,

---

[3] The Government does not contest that Coleman has exhausted his administrative remedies. Accordingly, the Court will evaluate Coleman's arguments in support of his motion on the merits.

5222. Congress provided that this relief was not retroactive. The Fourth Circuit has since held that district courts can consider the First Step Act's § 924(c) change when evaluating a defendant's motion pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). *McCoy*, 981 F.3d at 285–86. The Fourth Circuit recently noted in *United States v. Brown* that "Congress did not make this change to § 924(c) retroactive [but concludes] § 3582(c)(1)(A) allow for 'individual relief' based on a § 924(c) sentencing disparity 'in the most grievous cases." ____F.4th____, 2023 WL 5257673 at *7 (4th Cir. Aug. 16, 2023).[4] The Court will consider Coleman's request for relief as the Fourth Circuit provided in *McCoy* and *Brown*.

Turning to Coleman's argument that these changes constitute an "extraordinary and compelling reason" for a reduction in his sentence,[5] the Court acknowledges the First Step Act's prospective elimination of the "stacking" of

---

[4] The Court has carefully reviewed the Fourth Circuit's recent published opinion in *United States v. Brown*, ____F.4th____, 2023 WL 5257673 at *1 (4th Cir. Aug. 16, 2023). In that case, the defendant, Kelvin Brown, was charged with eight drug and firearm charges, including two counts of possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c). *Id.* Brown went to trial, and a jury convicted him on seven of eight counts—including the two § 924(c) charges. *Id.* Brown received a total sentence of approximately 57 years, 30 of which were for his two "stacked" § 924(c) convictions. *Id.* In 2020, Brown moved for compassionate release arguing, in part, that the First Step Act's changes to the "stacking" of § 924(c) convictions constituted an "extraordinary and compelling reason" in favor of relief because of the disparity in the sentence he received and the one he would receive today. *Id.* at * 2. The district court denied the motion, concluding that Brown could not establish "extraordinary and compelling reasons" and because the 18 U.S.C. § 3553(a) sentencing factors weighed against granting Brown relief. *Id.* On appeal, the Fourth Circuit reversed the district court, vacated its order, and remanded the case with instructions to reduce Brown's sentence by 20 years. *Id.* In doing so, the Fourth Circuit majority concluded that, because of the First Step Act's changes to § 924(c), the disparity between the sentence Brown received and the one he would receive today constituted an "extraordinary and compelling reasons." *Id.* After concluding that Brown established "extraordinary and compelling reasons," the *Brown* majority proceeded to independently reweigh the § 3553(a) sentencing factors, finding that they supported a reduction in Brown's sentence. *Id.* Specifically, the majority noted that Brown had made rehabilitative efforts, received only one disciplinary infraction, and was serving a sentence based on *nonviolent* conduct. *Id.*

[5] The Court notes that Coleman previously raised this argument in his first § 3582 motion. ECF No. 203 at 2–4. This argument was addressed at length in the Court's order denying his first § 3582 motion. ECF No. 224 at 4–5. Hence, the Court incorporates its analysis of Coleman's § 924(c) argument from its prior order.

sentences under to § 924(c). As a result, if Coleman pled to the same two charges today, he would be subject to a lower mandatory minimum sentence on the second § 924(c) count and a lower overall sentencing range. As noted, Congress did not make the First Step Act's § 924(c) change retroactive.[6] *See* § 403(b), 132 Stat. at 5222 ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment*.") (emphasis added). Although the First Step Act's change to § 924(c) sentences "can constitute an extraordinary and compelling reason for relief," the Fourth Circuit recognized that "not *all* defendants convicted under § 924(c) should receive new sentences." *McCoy*, 981 F.3d at 285, 287 (emphasis added). Deciding whether a particular defendant's sentence should be reduced is ultimately an individualized, case-by-case inquiry. *See id.* at 287–88. In light of *McCoy* and *Brown*, the Court concludes Coleman's position is "relevant to . . . the 'extraordinary and compelling reasons' inquiry [.]" *Brown*, 2023 WL 5257673 at *7. However, the question of a sentence reduction here is based—and focused on—a review of the criminal conduct committed, Coleman's criminal history, relevant § 3582(c) issues raised in the briefing, applicable caselaw, the 18 U.S.C. § 3553(a) sentencing factors, and changes in the law.

### B. *The Court's review of the § 3553(a) factors*

Even where, as here, a district court finds that a defendant has established

---

[6] Nevertheless, the Court recognizes that this change must still be considered when evaluating a motion for compassionate release. *See McCoy*, 981 F.3d at 284.

"extraordinary and compelling reasons," the district court "is still not required to grant the defendant's motion for a sentence reduction. Rather, it must 'consider' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)) (cleaned up); *see also United States v. Hargrove*, 30 F.4th 189, 195 (4th Cir. 2022) (noting that, even if a prisoner establishes "extraordinary and compelling circumstances," a district court is "not required to grant the defendant's motion for a sentence reduction."). Here, the Court concludes that, based on both Coleman's repeated violent conduct in connection to the instant federal charges, his criminal history, and his continued disciplinary infractions, the § 3553(a) factors weigh against granting his request for relief.[7]

As part of the § 3553(a) factors, it is appropriate to review the facts surrounding Coleman's instant offenses. That conduct is discussed in significant detail in Paragraphs 12–23 of the PSR, which the Court incorporates by reference. This order previously set forth that conduct, but the Court will highlight the relevant portions again here. As noted, Coleman committed three violent, armed carjackings. During each carjacking, Coleman and his codefendant both possessed and brandished firearms to commit violent crime. Coleman threatened to kill the victims. After a review of the facts of the instant offenses, the Court concludes that "the nature and circumstances of the offense" weigh heavily against a reduction in

---

[7] The Court has balanced those factors given the compassionate release issues not in play at the original sentencing. *Kibble* at 335 (Gregory, C.J., concurring).

Coleman's sentence. *Contra Brown*, 2023 WL 5257673 at *7 ("While we do not make light of the serious conduct for which Brown was convicted, we cannot ignore the extraordinary fact that Brown . . . was not charged with causing any physical violence or injury"). Coleman clearly committed violent crime and threatened his victims with physical harm and death. The conduct outlined makes it clear that Coleman would pose a great risk to the public if released or if his sentence is reduced.

The Court next looks to "the history and characteristics of the defendant," which reveals Coleman's significant—and violent—criminal history accumulated before his current Coleman's federal convictions. His criminal history began when he was just 14-years-old and includes convictions for drug activity and violent conduct, including: (1) possession of a controlled substance (law enforcement recovered six small yellow Ziploc plastic bags containing crack cocaine); (2) possession of a stolen auto (the vehicle was stolen from a hospital); (3) manufacture/deliver cocaine; (4) aggravated unlawful use of a weapon/vehicle; (5) possession of a controlled substance near an elementary school (PCP), and (6) battery–cause bodily harm. PSR ¶¶ 34–39.

The Court finds that the facts surrounding two of these convictions warrant further discussion here. First, Coleman's conviction for aggravated unlawful use of a weapon/vehicle. This conviction occurred while Coleman was residing in Chicago, Illinois. *Id.* ¶ 27. In October 2002, the Chicago Police Department responded to a call regarding a man with a gun. *Id.* The responding officers observed Coleman

running into an apartment building with a silver object in his hand. *Id.* After a brief foot chase, officers detained Coleman. *Id.* During the chase, Coleman threw the silver object under a porch. *Id.* Officers later recovered the item, which turned out to be a chrome three-inch barrel zip-gun containing a .22 caliber round.[8] *Id.* Officers later found six live .22 rounds in Coleman's possession. *Id.* After receiving his *Miranda* rights, Coleman informed officers that he made the zip-gun himself and could make a zip-gun from .22 to .40 caliber. *Id.*

Second, Coleman's conviction for battery–cause bodily harm. *Id.* ¶ 39. During this violent altercation, Coleman struck and injured three victims. *Id.* He struck the first victim in the face. *Id.* He then struck the second victim in the arm before punching the third victim in the jaw. *Id.*

Coleman's prior criminal convictions resulted in 9 criminal history points, which placed him in a criminal history category of IV. *Id.* ¶ 44. After a review of Coleman's criminal history, the Court concludes that "the history and characteristics of the defendant" weigh against a reduction in his sentence because his convictions are either (1) violent, (2) include the illegal possession of firearms, or (3) involve illegal narcotics.

The Court also concludes that §§ 3553(a)(2)(A)-(C) weigh against release for similar reasons. The circumstances of the instant offenses and Coleman's criminal history demonstrate his propensity to engage in criminal conduct and commit acts of violence. His actions also demonstrate his disrespect for the law and the safety of

---

[8] A zip-gun is a homemade firearm consisting of a barrel, breechblock, and firing mechanism.

others. As outlined above, Coleman's conduct during the carjackings was egregious and violent. The sentence imposed was—and is—necessary to (1) reflect the seriousness of the offense, (2) promote respect for the law, (3) provide just punishment, and (4) to afford adequate deterrence.

The Court next turns to §§ 3553(a)(3)-(6), which analyzes the kinds of sentences available, the guidelines sentencing range, any applicable policy statements, and the need to avoid sentencing disparity. First, the Court gives great weight to the parties' plea negotiations and resulting plea agreement. Here, Coleman was named in seven of eight counts in the Indictment. The Government sought a long sentence against him based on his crimes. To accomplish imposing this sentence, the Government entered a plea agreement with Coleman. In exchange for his plea, the Government agreed to drop five of seven counts charging serious offenses, pursuant to a written plea agreement. The dismissed counts were: carjacking (Count 1), carjacking (Count 2), carjacking (Count 3), carjacking (Count 4), § 924(c) violation (Count 6), and felon in possession (Count 8).

The Government had the option to seek convictions on the dismissed counts, which would have resulted in a much higher sentence. However, the Government made a plea offer to Coleman as outlined. At that time, some 19 years ago, after entering the plea agreement, the Government was fully aware of the *then-existing* sentencing option when defendants, like Coleman, were charged with multiple § 924(c) counts. Under this framework, the Government made an agreement in which Coleman would plead to two § 924(c) counts and receive a 32-year sentence. *See*

*United States v. Ford*, No. CR 0:14-362-JFA, 2021 WL 4555730, at *10 (D.S.C. Oct. 5, 2021) (noting that the plea-bargaining process "may well be the reason that Congress expressly stated that the anti-stacking provision of the First Step Act was not retroactive. A retroactive application upsets settled bargains from years ago that were made in good faith."). Accordingly, Coleman pled guilty to two counts of brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). He pled guilty knowing those two counts carried a statutory minimum sentence of 32 years (7-year statutory minimum on Count 2, with 25 years consecutive on Count 4). Coleman was also well-aware five serious charges were dismissed in exchange for his plea.

Second, while Coleman would face a lower starting mandatory minimum on his second § 924(c), if sentenced today, he could still receive the 32-year sentence originally imposed. Today, on both § 924(c) convictions, he would face a mandatory *minimum* of 84 months consecutive. But this is only the mandatory statutory *minimum*. Coleman could be sentenced up to a statutory *maximum* of Life on either § 924(c) conviction. The Court imposed the statutory minimum sentence of 32 years when a Life sentence was available. Thus, if sentenced today, Coleman could still receive the original 384-month sentence imposed despite facing a lower statutory minimum on his second § 924(c) conviction.

Again, the Court acknowledges that the First Step Act eliminated the "stacking" of sentences pursuant to § 924(c). As a result, if Coleman only pled to the same two counts today, he would be subject to a lower mandatory minimum.

However, this alone is not a basis to reduce his sentence. Considering Coleman's prior record and the continued violence in connection with the federal offenses, a 14-year minimum sentence on the same two § 924(c) counts today would be inadequate. Thus, when considering the instant offense conduct and Coleman's previously noted prior convictions, there is a limited basis to conclude that a lesser or significantly lower sentence would be imposed today. The Court declines, for the reasons stated, to disturb the results of the parties' carefully crafted plea agreement. Accordingly, the Court concludes that §§ 3553(a)(3)-(6) do not weigh in favor of release.

As to the remaining factors, the Court acknowledges that the record reflects that Coleman has made some rehabilitative efforts while incarcerated. The Court has also reviewed the character letters submitted on Coleman's behalf. Rehabilitation, however, when balanced against the factors above, does not warrant release. Additionally, the records submitted by Coleman in connection to his prior motion for compassionate release reflect that he has had several disciplinary issues while incarcerated. ECF No. 203-3 at 2–4. Although his last incident occurred in 2015, he had several, serious prior incidents: (1) being insolent to staff member in 2012; (2) possessing a dangerous weapon in 2007 (6" flat metal shank); (3) refusing to obey an officer in 2007; and (4) fighting with another person in 2006. *Id.* The Court concludes that this disciplinary history weighs against release. In sum, Coleman committed serious, violent crimes, both the instant offenses and in the past, and has continued to have disciplinary issues while incarcerated. His

rehabilitative efforts do not outweigh the repetitive violence and contempt for the law that he exhibited before his incarceration.

As noted, in *McCoy*, the Fourth Circuit indicated that district courts should not grant release based solely on the First Step Act's change to § 924(c) but should instead "conduct individualized inquires" and consider individual factors specific to the defendant. 981 F.3d at 288. The Court has followed that guidance and has based its decision on the individualized considerations outlined herein. The offense conduct at issue is very serious. Coleman participated in a violent carjacking spree where he and his co-defendant brandished firearms, kidnapped several victims, threatened to kill those victims, and robbed them. This conduct was egregious, serious, and significant. It demonstrates Coleman's disregard for both the safety of others and the law. In analyzing his first compassionate release motion, the Court concluded that the § 3553(a) factors weighed against granting Coleman relief. That conclusion remains unchanged. Based on the above analysis, the Court again finds that the § 3553(a) factors weigh against Coleman's request for relief. Moreover, the Court concludes that, if released, Coleman would pose a risk to the public's safety. Accordingly, the Court concludes a sentence reduction is not appropriate.

## CONCLUSION

The Court finds that Coleman's second motion for compassionate release should be denied based on an analysis and balancing of the 3553(a) factors because, if released, he would pose a significant risk to the public. Accordingly, it is the judgment of the Court that Coleman's second motion for compassionate release,

ECF No. 238, is **DENIED**.

**IT IS SO ORDERED.**

*s/ Terry L. Wooten*
Terry L. Wooten
Senior United States District Judge

September 8, 2023
Columbia, South Carolina